JOHN BALESTRERI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104025.   Promulgated June 30, 1942.

*Raymond M. Wansley, C. P. A.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

## OPINION.

HARRON: Petitioner contends that the facts and circumstances relating to his employment in the taxable year bring his earnings within the terms of section 116 (a) of the Revenue Act of 1936,[1] so that such income is exempt from Federal income tax. Petitioner

[1] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this title:

(a) EARNED INCOME FROM SOURCES WITHOUT UNITED STATES.—In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25 (a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

contends that his earnings were received from sources without the United States, because the labor was performed on a ship which was outside of the territorial waters of the United States. Petitioner contends, also, that he was a bona fide nonresident of the United States for more than six months during the taxable year, because when he was away from San Diego on fishing trips, he was not a "resident" of San Diego, and because the aggregate time away on fishing trips during the taxable year was more than six months.

The question is whether or not petitioner's earned income was, in fact, from "sources without the United States" within the intendment of section 116 (a). The question presented is one of first impression under the facts.

Respondent contends, first, that petitioner's case presents a situation to which Congress did not intend to apply the benefits of section 116 (a). We agree with this contention. The provision excluding from gross income "earned income from sources without the United States" was first enacted in the Revenue Act of 1926. The purpose of Congress in enacting the provision is perfectly clear. The enactment of the provision was a "step toward increasing our foreign trade" by excluding from gross income subject to Federal income tax the income earned by a nonresident citizen of the United States in the conduct of business abroad. See Report of Ways and Means Committee, 69th Cong., 1st sess., H. Rept. 1, p. 7; and Report of the Conference Committee, 69th Cong., 1st sess., H. Rept. 356, p. 33. The late Senator Reed Smoot, later a co-author of the Hawley-Smoot Tariff Act, and always a patron of our foreign trade, was a supporter of the provision in the Senate. He stated, at the time the proposed provision was debated, that it affected "all our commercial agents abroad who go to get business", and that it applied to an American citizen engaged in business in a foreign country for a period of six months or more. Congressional Record, vol. 67, p. 3781; Seidman's Legislative History of Federal Income Tax Laws, 1938–1861, pp. 472, 596. It was stated on the floor of the Senate more recently, when the Revenue Act of 1932 was before Congress, that the reason Congress originally enacted the exemption provision and reenacted it in several successive tax bills was because most foreign countries subject Americans who live within the foreign countries more than six months to their income tax, with the result that American citizens conducting business abroad and earning income abroad are subject to the income taxes of both the foreign countries and the United States:[2] Congress,

---

[2] Congressional Record, vol. 75, pp. 10410, 10411:

"Mr. Reed. * * * In order to help our foreign trade and to put all Americans who are working abroad in a position of equality with their competitors, the Congress in several successive tax bills has exempted from our income taxes that part of the earnings of those Americans which was earned abroad, provided they lived abroad more than six months out of the year.

following a liberal policy in the promotion of our foreign trade, intended that American citizens who earned income in a foreign country during a period of residence within such country for six months or more should not be required to include that income, earned outside the United States, in gross income for our income tax, because such income would be taxed by the government of the foreign country. The exclusion provision is a method of relieving some of our taxpayers from the income taxes of two countries, our own and a foreign country, with respect to income earned within a foreign country.

Obviously, petitioner's earnings in the taxable year were not subject to the income tax of any foreign country, and, although his labor out on the high seas was performed outside of the territorial waters of the United States, it was not performed within any foreign country. Petitioner does not so contend, and it appears that the income in question has not been taxed by the government of any foreign country. In our opinion, petitioner's case is not one within the area of the express Congressional intent.

Respondent contends, further, that the income in question was not received from sources without the United States because the labor performed in the earning thereof was upon an American registered ship. Respondent relies upon the rule that "a vessel is deemed a part of the territory of the country to which she belongs." *United States v. Rodgers*, 150 U. S. 249, 264. Respondent cites many cases where the rule has been applied, among them, *The Velox*, 21 Fed. 479, where it was held that the right of a seaman as respects a lien on the ship for wages earned is governed by the law of the vessel's flag. See also *United States Shipping Board Emergency Fleet Corporation* v. *Greenwald*, 16 Fed. (2d) 948, 950; *Cain* v. *Alpha S. S. Corporation*, 35 Fed. (2d) 717, 718; affd., 281 U. S. 642; *The Oriskany*, 3 Fed. Supp. 805; *Carrington* v. *Panama Mail S. S. Co.*, 241 N. Y. S. 347; affd., 251 N. Y. S. 803; *City of Norwich*, 279 Fed. 687; *The Hanna Nielsen*, 273 Fed. 171; certiorari denied, *Ole Tolo* v. *Steamship Hannah Neilson*, 257 U. S. 653.

We need not decide in this case the law upon the question where petitioner earned his wages under the facts. That question, strictly speaking, is not before us. Rather, the question is whether the income in question was "received from sources without the United States" within the intendment of section 116 (a).

It is held that section 116 (a) is not applicable to the income in question for the following reasons:

(1) The income was derived from sources within the United States,

---

"The reason for doing that was that most countries—Canada and Great Britain, for example—subject an American to their income tax if that American lives in their country for more than six months. The result of taxing such Americans would be that, first, they paid the British or the Canadian income tax and then the American income tax on top of it."

because petitioner's receipt of compensation was entirely dependent upon the sale of the fish within the United States. None of the fish caught were sold outside of the United States. Petitioner's testimony is clear that if the fish were not sold, if no fish were caught, or if the caught fish spoiled and became unsuited for sale, he received no compensation for the time and work given. This is because his wages were derived solely from his right to share in the net proceeds from sales made in the United States, if any net proceeds were realized.

(2) Petitioner was not a "bona fide nonresident of the United States" within the intendment of Congress as it used such phrase in section 116 (a). Petitioner called San Diego his "home", as his testimony shows. The term residence connotes, among other things, the place in which a person makes his home. See Joseph H. Beale, The Conflict of Laws, vol. 1, p. 254; *Domes* v. *Board of Supervisors of Erie County*, 243 N. Y. S. 640, 643; *Commissioner* v. *Estate of W. M. L. Fiske*, 128 Fed. (2d) 487. The term residence means actual place of abode, whether temporary or permanent. *Tenatello* v. *Pons*, 256 N. Y. S. 763, 765. "Residence" in law, once obtained, continues without intermission until a new one is gained. *Brueckmann* v. *Frignoca*, 152 Atl. 780. Petitioner's residence was at his mother's home in San Diego in 1936 and 1937. By absenting himself therefrom temporarily when he went away on fishing trips, petitioner did not give up his established residence.

It is unnecessary, in view of the holding made, to consider petitioner's contention that his work outside the territorial waters aboard ship was "for more than six months during the taxable year." Since the income in question was not derived from sources without the United States, within the intendment of section 116 (a), it is immaterial whether or not petitioner was aboard ship for a continuous six-month period or an aggregate time of six months, intermittently.

Respondent added a penalty of 25 percent of the tax for delinquency in the filing of the return for 1937 under section 291. That determination was correct unless it can be shown that petitioner's failure to file his return within the time prescribed by law was due to reasonable cause and not due to willful neglect. See *Estate of Frederick C. Kirchner*, 46 B. T. A. 578. In this case petitioner has not shown reasonable cause for failure to file the return. Sometime around the date the return for 1937 was due petitioner was told by a tax consultant that he should file a "no tax" return. He failed to act upon this advice for reasons unknown. His returns from fishing trips during 1937 were frequent and he could have filed the return. The notices from the Bureau of Internal Revenue telling petitioner that he had not filed a return were sent to petitioner's residence. The delay in his receipt of the notices, personally, is immaterial, as is the fact that the Bureau sent the notices to him. The penalty is imposed for failure of

the taxpayer to file a return *within the time prescribed by law.* Petitioner, without reasonable cause, failed to file his return on time. *Logan Coal & Timber Association* v. *Helvering*, 122 Fed. (2d) 848; *O'Sullivan Rubber Co.* v. *Commissioner*, 120 Fed. (2d) 845; *Noteman* v. *Welch*, 108 Fed. (2d) 206.

*Decision will be entered for the respondent.*